IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael Foster,                          :           Case No. 01:12 CV 2030
      Petitioner,                      :
                                            :
vs.                                      :
                                            :
Jason Bunting, Warden,                   :           **MAGISTRATE'S REPORT AND**
      Respondent.                      :           **RECOMMENDATION**

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, filed August 7, 2012 (Docket No. 1), Respondent's Return, filed February 19, 2013 (Docket No. 8), and Petitioner's Traverse, filed April 26, 2013 (Docket No. 12). Given the filing date of the petition, the provisions of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) apply. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For the reasons set forth below, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus.

## II. PROCEDURAL BACKGROUND

**A.    INDICTMENT**

Petitioner Michael Foster ("Petitioner") was indicted by a Cuyahoga County, Ohio, Grand Jury during its May 2002 term, on eighteen counts, including five (5) counts of aggravated robbery, four (4) counts of attempted aggravated murder, five (5) counts of felonious assault, possessing criminal tools, receiving stolen property, kidnapping, and being a felon in possession of a firearm (Docket No. 8, Attachment 2). These charges were accompanied by firearm, prior conviction, and repeat violent offender specifications (Docket No. 8, Attachment 2). Petitioner entered a plea of not guilty to all charges (Docket No. 8, Attachment 3, pp. 16-17 of 17).

On November 13, 2002, Petitioner withdrew his not guilty pleas and entered pleas of guilty to eleven of the eighteen original counts.  The remaining counts were dismissed (Docket No. 8, Attachment 4). Petitioner was subsequently sentenced to a term of eighty-four years in prison (Docket No. 8, Attachment 5).

**B.    THE DIRECT APPEAL**

Petitioner perfected a Notice of Appeal, through counsel, in the Eighth Judicial District Court of Appeals for Cuyahoga County, Ohio, on December 18, 2002 (Docket No. 8, Attachment 7). On April 11, 2003, Petitioner presented two assignments of error/issues to the Court of Appeals:

    1.    Petitioner's plea was not entered knowingly, intelligently, or voluntarily because Petitioner failed to understand the nature of the charges against him.

    2.    The trial court erred in sentencing Petitioner to consecutive sentences on his firearm specifications.

2

(Docket No. 8, Attachment 8).[1] On September 15, 2003, the State filed its Answer Brief in opposition to Petitioner's appeal (Docket No. 8, Attachment 9). On November 3, 2003, the Court of Appeals dismissed Petitioner's first assignment of error but remanded Petitioner's case to the trial court for re-sentencing based on Petitioner's second assignment of error (Docket No. 8, Attachment 10). On April 2, 2004, Petitioner was re-sentenced to a term of fifty-eight years (Docket No. 8, Attachment 15).

## C.    APPLICATION TO RE-OPEN APPEAL

While awaiting re-sentencing, Petitioner timely filed an Application to Re-Open his direct appeal pursuant to App.R. 26(B) on January 9, 2004 (Docket No. 8, Attachment 16). In his application, Petitioner claimed his appellate counsel was ineffective for failing to raise the following alleged errors:

1.    Trial court erred in accepting Petitioner's guilty plea because the plea was not knowing, intelligent, or voluntary.

2.    Trial counsel was ineffective for failing to raise the issue of Petitioner's safety in the Cuyahoga County jail.

3.    Appellate counsel was ineffective by failing to raise genuine issues of a violation of Petitioner's Sixth Amendment rights.

(Docket No. 8, Attachment 16). The State opposed Petitioner's application (Docket No. 8, Attachment 17). On May 12, 2004, the Appellate Court denied Petitioner's application, finding Petitioner failed to demonstrate a genuine issue as to whether he was deprived of effective assistance of counsel (Docket No. 8, Attachment 18). Petitioner timely appealed this ruling to the Ohio Supreme Court (Docket No. 8, Attachment 21), which subsequently denied jurisdiction on

---

[1] On March 17, 2003, Petitioner filed, *pro se*, a Notice of Appeal (Docket No. 8, Attachment 13). This Motion was dismissed, *sua sponte*, by the Court of Appeals for Petitioner's failure to file a praecipe on March 25, 2003 (Docket No. 8, Attachment 14).

September 29, 2004 (Docket No. 8, Attachment 24).

**D.     FIRST PETITION FOR HABEAS CORPUS AND RELATED MOTIONS**

On April 20, 2005, Petitioner filed, *pro se*, a Petition for Writ of Habeas Corpus in the

United States District Court Northern District of Ohio, Eastern Division (Docket No. 8,

Attachment 25). In his Petition, Petitioner alleged two assignments of error/issues:

1.     Petitioner's guilty plea was involuntary because it was made under fear
       for his life in the County Jail.

2.     Petitioner received ineffective assistance of appellate counsel because
       counsel failed to make the argument that Petitioner only pled guilty to
       save himself from harm.

(Docket No. 8, Attachment 25). On November 8, 2007, District Court Judge Dan Aaron Polster

found the trial court erred in accepting Petitioner's guilty plea given the court's failure to

investigate Petitioner's claims of harm (Docket No. 8, Attachment 27). Therefore, Judge Polster

granted Petitioner conditional habeas relief and ordered Petitioner to appear before the trial court

within 120 days either for a new trial or to enter a new plea (Docket No. 8, Attachment 27).

Prior to trial, on June 25, 2008, Petitioner filed, *pro se*, a Motion to Dismiss all charges

against him in the trial court, alleging the State failed to hold the new trial and/or plea within the

ordered 120-day timeframe (Docket No. 8, Attachment 29). The trial court denied Petitioner's

Motion without explanation on September 25, 2008 (Docket No. 8, Attachment 30). Petitioner

also filed two Motions to Suppress, seeking to exclude both the photo array used against him

(Docket No. 8, Attachment 31), and his allegedly involuntary statements (Docket No. 8,

Attachment 32).

On May 3, 2010, jury selection began in Petitioner's new trial for the original 2002

charges (Docket No. 8, Attachment 33). Prior to completion of voir dire, Petitioner again

4

withdrew his plea of not guilty and re-entered a plea of guilty to thirteen of the originally

charged eighteen counts (Docket No. 8, Attachment 34).

While Petitioner's appeal was pending, the victim of Petitioner's attempted murder,

Anwar Hamed ("Mr. Hamed") died from injuries sustained as a result of Petitioner's crimes.

*Ohio v. Foster*, 2011 Ohio 2781 (Ohio Ct. App. 2011). As a result of Mr. Hamed's death,

Petitioner was indicted in a second case, CR-514430 ("Hamed murder case"), on the following

six counts:

| | | |
|---|---|---|
| Count 1: | aggravated murder, in violation of R.C. § 2903.01(B) | |
| Count 2: | aggravated murder, in violation of R.C. § 2903.01(A) | |
| Count 3: | aggravated robbery, in violation of R.C. § 2911.01(A)(1) | |
| Count 4: | aggravated robbery, in violation of R.C. § 2911.01(A)(3) | |
| Count 5: | having a weapon while under a disability, in violation of R.C. § 2923.13(A)(2) | |
| Count 6: | receiving stolen property, in violation of R.C. § 2913.51(A) | |

*Id*. at *P2. The first four counts also carried one- and three-year firearm specifications, as well as

prior conviction and repeat violent offender specifications. *Id.* Following an eight-day jury trial,

Petitioner was found guilty of the lesser included offense of murder on count one, both counts of

aggravated robbery, having a weapon while under a disability, and receiving stolen property. *Id*.

at *P3.

On May 5, 2010, Petitioner was sentenced in the Hamed murder case and re-sentenced on

his original 2002 charges. For his original conviction, Petitioner received a total of eighteen

years (Docket No. 8, Attachment 50, pp. 69-80 of 80), with a five-year term of post release

control (Docket No. 8, Attachment 50, p. 72 of 80). For the Hamed murder case, Petitioner

5

received a sentence of fifty-three years to life (Docket No. 8, Attachment 50, pp. 69-80 of 80). The sentences were ordered to be served concurrently (Docket No. 8, Attachment 50, pp. 69-80 of 80).

### E.    DIRECT APPEAL FROM RE-SENTENCING

On June 4, 2010, Petitioner filed, *pro se*, a Notice of Appeal on his original charges in the Eighth Judicial District Court of Appeals for Cuyahoga County, Ohio (Docket No. 8, Attachment 49). The Appellate Court dismissed this motion *sua sponte*, citing Petitioner's failure to file the required praecipe (Docket No. 89, Attachment 49).

On August 20, 2010, Petitioner again filed, *pro se*, a Notice of Appeal on his original charges in the Eighth Judicial District Court of Appeals for Cuyahoga County, Ohio (Docket No. 8, Attachment 36), along with a Motion to file a Delayed Appeal (Docket No. 8, Attachment 37). In his Motion, Petitioner alleged the following four assignments of error/issues:

1.   Petitioner's guilty plea was based on ineffective assistance of counsel, given counsel's failure to communicate with Petitioner and failure to have Petitioner re-sentenced within 120 days of the United States District Court's order. Therefore, Petitioner's plea was not knowingly made.

2.   The trial court erred by failing to rule on Petitioner's *pro se* motions for appointment of new counsel.

3.   The prosecutor withheld a written statement from Mr. Hamed, who indicated that he was shot not by Petitioner, but by another individual.

4.   Petitioner was denied effective assistance of counsel given trial counsel's failure to call to the attention of the trial court the multiplicity of the indictments. Further, the trial court erred in allowing the multiplicity of the indictments and by ignoring Petitioner's *pro se* motions regarding the issue.

(Docket No. 8, Attachment 39). On August 24, 2010, the Appellate Court granted Petitioner's Motion to file a Delayed Appeal (Docket No. 8, Attachment 38). The State filed its Answer Brief

in opposition to Petitioner's Motion on February 17, 2011 (Docket No. 8, Attachment 40). On

July 21, 2011, the Appellate Court denied Petitioner's Motion and affirmed the judgment of the

trial court (Docket No. 8, Attachment 42).

On August 17, 2011, Petitioner, *pro se*, timely appealed this decision to the Ohio

Supreme Court (Docket No. 8, Attachment 44), alleging the following four assignments of

error/issues:

1.   A reviewing court should acknowledge that a defendant must be allowed
     to request appointment of new counsel to the trial court first.

2.   A reviewing court should not ignore prosecutor misconduct and
     ineffective assistance of counsel.

3.   A reviewing court should not allow multiplicity of indictments and
     ineffective assistance of counsel.

4.   What is the remedy for a defendant who files a Writ of Procedendo and
     Judicium with the administrative judge and a conflict of interest exists?

(Docket No. 8, Attachment 45). The Ohio Supreme Court denied jurisdiction on November 30,

2011 (Docket No. 8, Attachment 46).

## F.   PETITION FOR WRIT OF HABEAS CORPUS

Petitioner filed a Petition under 28 U.S.C. § 2254(d) for Writ of Habeas Corpus on

August 7, 2012, which is now before this Court, alleging the following seven assignments of

error/issues:

1.   The trial court erred by not informing Petitioner of his appellate rights and
     his right to an attorney on direct appeal, a violation of due process and
     equal protection.

2.   Petitioner was denied effective assistance of appellate counsel during his
     direct appeal, given he did not know he was eligible for appellate counsel.

3.   Ineffective assistance of counsel is cause to excuse any procedural default.

7

4.  Ineffective assistance of trial counsel due to a failure to bring to the trial court's attention multiplicity of indictments. Subsequent failure of the trial court to recognize Petitioner's *pro se* motions to have the court recognize the same.

5.  The trial court violated Petitioner's due process rights by failing to rule on his *pro se* motion for appointment of new trial counsel.

6.  The trial court violated Petitioner's due process rights by refusing to address the multiplicity of indictments.

7.  The prosecutor engaged in misconduct by withholding exculpatory evidence.

(Docket No. 1). The State opposes the Petition and urges this Court to deny the Writ (Docket No. 8).

## IV. ANALYSIS

Petitioner fails to present any ground upon which this Court may grant relief. Although Petitioner's fourth, fifth, sixth, and seventh claims have been properly raised and are subject to habeas review, the Magistrate finds them to be without merit. Petitioner's remaining claims, grounds one through three, were not exhausted at the state level and are therefore procedurally defaulted. The Magistrate deals first with this procedural issue.

## A.  PROCEDURAL ISSUES

### 1.  PROCEDURAL DEFAULT STANDARD OF REVIEW

Claims in federal habeas corpus can only be pursued if certain procedural requirements are met. Federal courts lack jurisdiction to consider a habeas petition claim not fairly presented to the state courts. *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (*citing Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A petitioner "fairly presents a federal habeas claim to the state courts only if he 'asserted both the factual and legal basis for his claim.'" *Hicks v. Straub*, 377 F.3d 538, 552 (2004) (*quoting McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.

8

2000)). In making this determination, a habeas court may consider whether:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis question; or (4) the petitioner alleged 'facts well within the mainstream of [the pertinent] constitutional law.'

*McMeans*, 228 F.3d at 681.

Not only must a state prisoner fairly present his case to the state courts, he must also *exhaust* his state remedies before bringing his claim in a federal habeas corpus proceeding. 28 U.S.C. § 2254(b), (c). A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If there remains a remedy under state law the petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim. *Drummond v. Houk*, 761 F.Supp.2d 638, 662 (N.D. Ohio 2010).

In *Maupin v. Smith*, the Sixth Circuit outlined that now familiar test to be followed in cases of potential procedural default. 785 F.2d 135 (6th Cir. 1986). First, the federal court must determine whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Id*. at 138. Second, the federal court must determine whether the state courts enforced the state procedural sanction - that is, whether the state courts actually based their decisions on the procedural rule. *Id*. Third, the federal court must consider whether the state rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Id*. To be independent, "a state procedural rule and the state courts' application of it 'must rely in no part on federal law.'"

9

*Drummond*, 761 F.Supp.2d at 663 (*citing Fautenberry v. Mitchell*, 2001 U.S. Dist. LEXIS 25700 (S. D. Ohio 2001)). To be adequate, "a state procedural rule must be 'firmly established and regularly followed' by the state courts at the time it was applied. *Drummond*, 761 F.Supp.2d at 663 (*quoting Beard v. Kindler*, 130 S.Ct. 612, 617 (2009)).

In determining whether the first three *Maupin* factors are met, the federal court looks to the "last explained state court judgment." *Drummond*, 761 F.Supp.2d at 664 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)). If this court rendered its opinion based on the state procedural bar, default occurs. *Maupin*, 785 F.2d at 138. If this court reached its opinion based on the merits of the claim, default does not occur and the federal habeas court may also consider the merits of the claim. *Id*.

Finally, under *Maupin*, if a claim is procedurally defaulted, a federal court may only consider the merits of the claim if the petitioner demonstrates either: (1) there was cause for him not to follow the procedural rule and he was actually prejudiced by the alleged constitutional error; or (2) a fundamental miscarriage of justice will result from a bar of federal habeas review. *Id*. With regard to the first option, to establish "cause," a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule. *Kirby v. Beightler*, 2010 U.S. Dist. LEXIS 87158, *14 (N.D. Ohio 2010). To establish "prejudice," the petitioner must show the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension. *Id*. There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial. *Id*.

The second option, demonstrating a fundamental miscarriage of justice, is closely tied to the "actual innocence" doctrine. *Gibbs v. United States*, 655 F.3d 473, 477-78 (6th Cir. 2011)

10

(*citing Schlup v. Delo*, 513 U.S. 298, 321 (1995)). According to the United States Supreme

Court, "in an extraordinary case, where a constitutional violation has probably resulted in the

conviction of one who is actually innocent, a federal habeas court may grant the writ even in the

absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496

(1986)). Actual innocence is an extremely narrow exception, and one that is very rarely

successful. *Gibbs*, 655 F.3d at 477-78.

To demonstrate a fundamental miscarriage of justice, a petitioner must prove he or she is

actually innocent of the crime for which he or she was convicted. *Brinkley v. Houk*, 2012 U.S.

Dist. LEXIS 60621 (N.D Ohio 2012). Actual innocence means factual innocence, not mere legal

insufficiency. *Id*. To establish actual innocence, "a petitioner must show that it is more likely

than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*Cleveland v. Bradshaw*, 760 F.Supp.2d 751, 756 (N.D. Ohio 2011) (*quoting Schlup*, 513

U.S. at 327). To prevail, a petitioner must support his allegations with new reliable evidence not

presented at trial, whether it be exculpatory evidence, scientific evidence, critical physical

evidence, or trustworthy eyewitness accounts. *Bradshaw*, 760 F.Supp.2d at 756.

## 2. GROUNDS ONE, TWO, AND THREE ARE PROCEDURALLY DEFAULTED

In his direct appeal from his May 2010 judgment of conviction, Petitioner presented four

assignments of error to the Court of Appeals:

1. Petitioner's guilty plea was based on ineffective assistance of counsel, given counsel's failure to communicate with Petitioner and failure to have Petitioner re-sentenced within 120 days of the United States District Court's order. Therefore, Petitioner's plea was not knowingly made.

2. The trial court erred by failing to rule on Petitioner's *pro se* motions for appointment of new counsel.

11

3.      The prosecutor withheld a written statement from Mr. Hamed, who indicated that he was shot not by Petitioner, but by another individual.

4.      Petitioner was denied effective assistance of counsel given trial counsel's failure to call to the attention of the trial court the multiplicity of the indictments. Further, the trial court erred in allowing the multiplicity of the indictments and by ignoring Petitioner's *pro se* motions regarding the issue.

(Docket No. 8, Attachment 39). These issues were also presented by Petitioner to the Ohio

Supreme Court (Docket No. 8, Attachment 45).

Examination of Petitioner's current habeas claims reveals that grounds four, five, six, and seven clearly mirror Petitioner's direct appeal claims two, three and four (Docket No. 1; Docket No. 8, Attachment 39). For ease of discussion, it should be noted that both habeas grounds four and six are contained within direct appeal claim four. However, habeas claims one, two, and three are absent from Petitioner's direct appeal.

As stated above, Petitioner must exhaust his state court remedies before bringing his claim in a federal habeas corpus proceeding. 28 U.S.C. § 2254(b), (c). This requirement is only satisfied when the highest court in the state in which a petitioner has been convicted has had a full and fair opportunity to rule on the claims. *Rust*, 17 F.3d at 160. Without exhaustion, the federal habeas courts cannot entertain the merits of the claim. *Drummond*, 761 F.Supp.2d at 662. Given Petitioner's failure to present habeas claims one, two, and three to the state courts for proper review, they are now procedurally defaulted under the doctrine of *res judicata*.

For purposes of the first two prongs of the *Maupin* analysis, it is well established under Ohio's doctrine of *res judicata* that a final judgment of conviction bars a convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at

12

the trial on the merits, or on appeal from that underlying judgment.  *State v. Perry*, 10 Ohio St. 3d 175, 180 (1967).  Thus, unless a claim is based on evidence outside of the record, it must be raised during the appeal or it is deemed waived.  *Id.* Here, Petitioner could have raised claims one, two, and three during the direct appeal from his re-sentencing. His failure to do so deems these claims waived.

With regard to the third *Maupin* prong, the Sixth Circuit has specifically held that the application of *res judicata* in criminal cases is an adequate and independent state ground on which the state can rely to foreclose federal review.  *Buell v. Mitchell*, 274 F. 3d 337, 348 (6th Cir. 2001).  Given Petitioner's failure to present habeas grounds one, two, and three, for state court review, Petitioner's claims are procedurally defaulted. The Magistrate may only excuse this default and consider Petitioner's claims on the merits if Petitioner can demonstrate either: (1) there was cause not to follow the procedural rule and Petitioner was actually prejudiced by the alleged constitutional error; or (2) a fundamental miscarriage of justice would result from a bar of federal habeas review. *Maupin*, 785 F.2d at 138.

To establish "cause," a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule. *Kirby*, 2010 U.S. Dist. LEXIS 87158 at *14. Petitioner alleges, in habeas grounds one and two, that he did not know he was eligible to appeal his sentence or to have counsel representing him on that appeal (Docket No. 1, p. 10 of 17). Review of the transcript from Petitioner's May 2010 sentencing hearing reveals otherwise:

> COURT:      Now, Mr. Foster, you have a right to appeal this sentence. For the
>                     purposes of this . . . are you indigent?
>
> PETITIONER:   Yes.

13

COURT:          You have no money to hire an attorney or get a transcript, all right. I'll order the transcript of this case at state's expense. I will appoint a lawyer unless – do you have a lawyer retained?

PETITIONER:     No.

COURT:          I'll appoint a lawyer to represent you on appeal who will deal with the appeal and take this through the appeal process and see what happens.

(Docket No. 8, Attachment 50, pp. 72-73 of 80). Given this exchange, Petitioner cannot now say that he was unaware of his right to appeal his sentence or his right to have an attorney represent him on appeal. Therefore, Petitioner cannot show cause for failing to follow the procedural rule.

To demonstrate a fundamental miscarriage of justice, a petitioner must prove he or she is actually innocent of the crime for which he or she was convicted. *Brinkley*, 2012 U.S. Dist. LEXIS 60621. This means "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Bradshaw*, 760 F.Supp.2d at 756. A petitioner must support his allegations with new reliable evidence not presented at trial. *Id*. Here, Petitioner makes no claim of actual innocence, and he certainly does not set forth any new reliable evidence upon which to stake a claim of actual innocence. Therefore, Petitioner cannot demonstrate a fundamental miscarriage of justice.

Furthermore, it is interesting to note that, despite Petitioner's claim of ignorance as to his appellate rights, Petitioner did, in fact, timely file a *pro se* direct appeal from his May 2010 judgment of conviction (Docket No. 8, Attachment 48). This Motion was dismissed for Petitioner's failure to file the necessary praecipe (Docket No. 8, Attachment 49). Of even more interest is Petitioner's history with the appellate court system. Petitioner originally pled guilty and was sentenced in this matter on November 19, 2002 (Docket No. 8, Attachment 4). Immediately following that conviction, Petitioner timely filed, *through counsel*, a Notice of

14

Appeal (Docket No. 8, Attachment 7). Given Petitioner's familiarity with sentencing and appeal, Petitioner cannot now use unfamiliarity as an excuse.

Therefore, given Petitioner's failure to exhaust his legal remedies within the state courts, and the inability of this Magistrate to find either just cause and actual prejudice or a fundamental miscarriage of justice, Petitioner's first, second, and third claims are procedurally barred. As such, this Magistrate recommends these claims be dismissed.

## B.    HABEAS CORPUS PETITION

To garner federal review, it is essential the legal claims raised by Petitioner in the state court be the substantial equivalent of the claims raised in his federal petition. Here, Petitioner fairly presented four claims to the state courts: (1) ineffective assistance of trial counsel for failure to raise claims of multiplicity and failure of the trial court to recognize Petitioner's *pro se* motions to do the same; (2) failure of the trial court to recognize Petitioner's *pro se* motions for appointment of new counsel; (3) failure of the trial court to address the issue of multiplicity in the indictments; and (4) misconduct by the prosecutor for withholding potentially exculpatory evidence (Docket No. 1).

### 1.    HABEAS STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413. The term "unreasonable" must be based on an objective interpretation. Therefore, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2792-93 (1979)).

In order to obtain federal habeas corpus relief, a petitioner must establish the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011) (*quoting Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011)). This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (2011) (*citing Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Harrington*, 131 S.Ct. at 787.

16

## 2.  GUILTY PLEA

On May 5, 2010, Petitioner pled guilty to thirteen of the eighteen original counts charged in case number CR-426781 (Docket No. 8, Attachment 50). The United States Supreme Court has held that

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The voluntariness of a plea is determined by "considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). A court "should ensure that a plea is voluntary by conducting a colloquy on the record that includes, *inter alia*, a determination that the defendant understands the permissible range of sentences." *Cochran v. Kelly*, 2011 U.S. Dist. LEXIS 101389, *23 (N.D. Ohio 2011) (*citing Boykin v. Alabama*, 395 U.S. 238, 242, n.7 (1969)). Failure by defendant's counsel or the court to ensure defendant has the correct information about his maximum potential sentence is grounds for habeas relief. *Hart v. Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir. 1991).

Therefore, in order for Petitioner to be successful on habeas claims four, five, six, or seven, he must show the alleged error or errors caused him to enter a plea that was not knowing, intelligent, or voluntary.

17

3.      GROUND FOUR

Petitioner's habeas ground four is two-fold. First, Petitioner argues ineffective assistance of trial counsel for failure to raise issues of indictment multiplicity (Docket No. 1, p. 11 of 17). Second, Petitioner cites failure of the trial court to acknowledge Petitioner's *pro se* motion to recognize the same (Docket No. 1, p. 11 of 17).

a.      INEFFECTIVE ASSISTANCE OF COUNSEL

To establish ineffective assistance of counsel, Petitioner must meet the long-established two-prong standard set forth in *Strickland v. Washington* (466 U.S. 668 (1984)), which requires Petitioner to prove that trial counsel's performance was both "deficient" and "prejudicial to the defense." *Strickland*, 466 U.S. at 687. "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington*, 131 S.Ct. at 787 (*quoting Strickland*, 466 U.S. at 688). To establish prejudice,

> a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

*Harrington*, 131 S.Ct. at 787-88 (*quoting Strickland*, 466 U.S. at 687, 693-94).

The *Strickland* standard necessarily sets a high bar that is difficult to overcome. As the Supreme Court reasoned in its decision,

> it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

18

> and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal citations omitted). The question, then "is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788 (*citing Strickland*, 466 U.S. at 690). The challenger bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Here, the trial court engaged in a lengthy colloquy with Petitioner regarding his voluntariness to enter a guilty plea and Petitioner's knowledge as to what that guilty plea would mean:

COURT:    First of all . . . you have the right to a trial by jury or you can waive that right and have this case tried to a judge of this court; do you understand that?

PETITIONER:   Yes.

COURT:    Do you also understand you have the right to be represented by an attorney throughout the entire proceedings either retained by you or if you could not afford one, the court would appoint one at no cost to you. Do you understand that?

PETITIONER:   Yes.

COURT:    You also understand you have the right to confront and cross examine all the witnesses called against you. Do you understand that?

PETITIONER:   Yes.

COURT:          You also understand you have [a] right to compulsory process. What that means is [your attorney] can go out and issue subpoenas to witnesses to come in and testify on your behalf; do you understand that?

PETITIONER:     Yes.

COURT:          You also understand you have the right to testify yourself, tell your side of the story, or if you choose not to testify, no one, absolutely no one could comment on the fact you chose not to testify. Do you understand that?

PETITIONER:     Yes.

COURT:          You also understand as you stand here today in this case you're presumed innocent up and until the State proves your guilt beyond a reasonable doubt. You could sit at the table and write a book, write letters, whatever you want; it's up to the State to prove this case. Do you understand that?

PETITIONER:     Yes.

COURT:          And, finally, do you understand that by entering today a plea of guilty you're going to waive or give up all of these rights and the court could proceed directly to sentencing but . . . I won't do it today. You understand that?

PETITIONER:     Yes.

(Docket No. 8, Attachment 50, pp. 6-8 of 80). After a discussion and explanation of the charges

against Petitioner and the sentences each of these charges carried, Petitioner pled guilty (Docket

No. 8, Attachment 50, pp. 16-19 of 80). At the end of its colloquy, the trial court questioned

Petitioner as to the voluntariness of his plea:

COURT:          Now, let me ask you this, again, Mr. Foster, is this plea voluntarily made of your own free will?

PETITIONER:     Yes.

(Docket No. 8, Attachment 50, p. 20 of 80).

20

Therefore, Petitioner entered a knowing, intelligent, and voluntary plea and cannot now attack that plea, absent any prejudice. Trial counsel's alleged failure to argue the multiplicity contained in the two indictments against Petitioner in no way impacted Petitioner's total sentence. Petitioner's sentences from both indictments were ordered to be served concurrently. In other words, Petitioner's eighteen-year sentence for the case at issue in this habeas claim, case number CR-426781, is being served at the same time as his sentence of fifty-three years to life for the murder of Mr. Hamed, case number CR-514430 (Docket No. 8, Attachment 50, pp. 69-80 of 80). Furthermore, the State dropped the duplicated charges prior to Petitioner's guilty plea (Docket No. 8, Attachment 50, p. 12 of 80). Absent this prejudice, the Magistrate finds this portion of habeas ground four to be without merit and recommends it be dismissed.

### b.  PETITIONER'S PRO SE MOTIONS

Petitioner also argues the trial court erred by failing to recognize his *pro se* motions concerning the multiplicity of the indictments (Docket No. 1, p. 11 of 17). Again, Petitioner must show the trial court's failure to accept these *pro se* motions somehow resulted in a faulty plea. Petitioner's argument is without merit.

First, for reasons outlined above, the trial court's failure to hear Petitioner's *pro se* motions on this issue had no influence on the ultimate outcome of Petitioner's case. Not only were the duplicate charges dropped prior to Petitioner's plea (Docket No. 8, Attachment 50, p. 12 of 80), but Petitioner is serving at least a fifty-three year sentence for the Hamed murder case (Docket No. 8, Attachment 50, pp. 69-80 of 80). Petitioner's eighteen-year sentence in his original case is to be served concurrently, therefore adding no additional time to Petitioner's overall sentence (Docket No. 8, Attachment 50, pp. 69-80 of 80).

21

Second, the trial court had no obligation to hear Petitioner's *pro se* motions while he was represented by counsel. The Ohio Supreme Court has held that "neither the United States Constitution, the Ohio Constitution nor case law mandates hybrid representation. Although appellant has the right either to appear *pro se* or to have counsel, he has no corresponding right to act as co-counsel on his own behalf." *State v. Martin*, 103 Ohio St.3d 385, 390 (Ohio 2004) (internal citations omitted). Any motion to correct the alleged multiplicity of indictments was required to come through Petitioner's counsel.

Therefore, Petitioner's habeas ground four is without merit and the Magistrate recommends it be dismissed.

### 4.    GROUND FIVE

In his fifth assignment of error, Petitioner alleges the trial court violated his due process rights for failing to rule on his *pro se* motion for appointment of new counsel (Docket No. 8, p. 11 of 17). Under *Broce*, Petitioner is barred from raising this claim unless he can show that the trial court's failure caused him to enter a plea that was not knowing, intelligent, or voluntary. *Broce*, 488 U.S. at 563. Petitioner fails to meet this burden.

When raised during Petitioner's state court review, the Appellate Court noted that "in order to justify the discharge of court-appointed counsel, an indigent defendant must show good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that leads to an apparently unjust result." *Ohio v. Foster*, 2011 Ohio 3582, *P23. Based on this standard, the Appellate Court found no cause to justify discharge of Petitioner's trial counsel and held that Petitioner knowingly pleaded guilty in accordance with a

22

plea bargain negotiated by his counsel for a sentence of eighteen years, with nine years credit for time served. *Id*. at *P24.

Petitioner has not now presented any additional evidence that would cause this Court to disagree with the findings of the Appellate Court. Despite expressing dissatisfaction with his counsel, Petitioner *still* pled guilty and did so voluntarily (Docket No. 8, Attachment 50, pp. 19-20 of 80). Therefore, Petitioner's fifth assignment of error is without merit and the Magistrate recommends it be dismissed.

### 5.   GROUND SIX

With regard to ground six, Petitioner alleges the trial court erred for failing to address the multiplicity of his two indictments (Docket No. 8, p. 12 of 17). More specifically, Petitioner claims he was "forced to pled[sic] guilty because counsel was allowing [Petitioner] to be tried again for the same charges he was already tried and convicted of in case no. 514430" (Docket No. 1, p. 12 of 17). However, on the record during his 2010 plea hearing, the State informed the trial court that it would be dropping any duplicate charges, based on Petitioner's recent conviction in the Hamed murder case (Docket No. 8, Attachment 50, p. 12 of 80). Given the State's correction, the trial court had no obligation to address any multiplicity in the indictments. Therefore, Petitioner's sixth assignment of error is without merit and the Magistrate recommends it be dismissed.

### 6.   GROUND SEVEN

In Petitioner's seventh assignment of error, he alleges the State withheld potentially exculpatory evidence in the form of a statement by the victim, Mr. Hamed, who claimed that it was another individual, not Petitioner, who robbed and shot him (Docket No. 1, p. 12 of 17). The

23

Court of Appeals refused to entertain this allegation, stating Petitioner's claim related to the Hamed murder case, not his original case. *Foster*, 2011 Ohio 3582 at *P25. Petitioner's claim is without merit.

In his petition and traverse, Petitioner indicates that, in 2002, when the charges were first brought and Petitioner originally pled guilty, neither Petitioner nor his then-trial counsel were aware of Mr. Hamed's statement (Docket No. 1, pp. 12-13 of 17; Docket No. 12, pp. 17-19 of 23). However, Petitioner admits that by 2008, he *was* aware of Mr. Hamed's statement (Docket No. 12, p. 19 of 23). Armed with this knowledge, Petitioner *still* pled guilty in May 2010 (Docket No. 8, Attachment 50). It cannot, therefore, be said that Petitioner's seventh assignment of error caused him to enter anything but a knowing, intelligent, and voluntary plea. Petitioner's assignment of error is without merit and the Magistrate recommends that it be dismissed.

## VI. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the Motion Brief, and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:        July 24, 2013

24

## VII. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

25